523 A.2d 1140

COMMONWEALTH of Pennsylvania, Appellant,

v.

Edward C. WESTCOTT, Jr.

COMMONWEALTH of Pennsylvania

v.

Edward C. WESTCOTT, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 11, 1986.

Filed Feb. 19, 1987.

Reargument Denied April 24, 1987.

178

180

John W. Peck, Assistant District Attorney, Arnold, for Com., appellant in No. 247 and appellee in No. 296.

Dennis J. Clark, Pittsburgh, for appellant in No. 296 and appellee in No. 247).

Before BROSKY, ROWLEY and POPOVICH, JJ.

BROSKY, Judge:

These are cross appeals before us for review. At No. 247 Pittsburgh, 1986, the Commonwealth of Pennsylvania appeals from that portion of an Order dated January 31, 1986, arresting judgment on cross-appellant's jury conviction of

involuntary deviate sexual intercourse. Edward C. West-cott, Jr.[1] cross appeals at No. 296 Pittsburgh, 1986 from the judgment of sentence following his conviction by a jury for the crime of attempted rape.

The Commonwealth presents the following issue for our review: whether cunnilingus is an act prohibited by 18 Pa.C.S.A. § 3123.

Appellant raises on cross appeal the following allegations of error:

I. Whether the Commonwealth waived its right of appeal of the trial court's order granting the motion in arrest of judgment.

II. Whether, under 18 Pa.C.S.A. § 3101, and § 3123 and various principles of statutory construction, "involuntary deviate sexual intercourse" requires proof of penetration with a penis, and, in the absence of such proof, whether the trial court erred in granting appellant's motion in arrest of judgment.

III. Whether § 3123 is unconstitutionally vague, both on its face and as it is applied to the evidence of the instant case.

IV. Whether the admission of certain prejudicial hearsay statements by Commonwealth witnesses constitutes reversible error and entitles appellant to a new trial and whether the failure of trial counsel to object to the admission of these statements constitutes ineffective assistance of counsel and entitles appellant to a new trial.

V. Whether the court erred in certain instructions to the jury, and whether trial counsel was ineffective by failing to object to these instructions and by failing to request certain other instructions.

VI. Whether the failure of the court to instruct on lesser included offenses constitutes reversible error and entitles appellant to a new trial and whether the failure of trial counsel to request an instruction on these lesser

1. For the sake of simplicity, we will refer to appellant the Commonwealth of Pennsylvania, as "the Commonwealth" and to cross-appellant, Edward Westcott, as "appellant" throughout this Opinion.

included offenses, or to object to the failure of the court to so instruct constitutes ineffective assistance of counsel and entitles appellant to a new trial.

VII. Whether the failure of the court to instruct the jury on the defense of renunciation under 18 Pa.C.S. § 901(c) constitutes reversible error and entitles appellant to a new trial and whether the failure of trial counsel to argue the renunciation defense, to request the renunciation instruction, and/or to object to the omission of said instruction constitutes ineffective assistance of counsel and entitles appellant to a new trial.

VIII. Whether trial counsel was ineffective for injecting into the trial the fact that the victim obtained a weapon during the incident.

We reverse the grant of appellant's motion to Arrest Judgment on the charge of involuntary deviate sexual intercourse and affirm the judgment of sentence on the charge of attempted rape.

## I. *The Commonwealth's Appeal*

■■■ Preliminarily, we note that the proper mode of attack upon the sufficiency of trial evidence is by a post-verdict motion in arrest of judgment. *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228 (1984). An adverse ruling on this question of law permits the Commonwealth to appeal therefrom. *Commonwealth v. Rawles*, 501 Pa. 514, 462 A.2d 619 (1983); *Commonwealth v. Driver*, 343 Pa.Super. 13, 493 A.2d 778 (1985).

■■■ The effect of a motion to arrest judgment is to admit all facts which the Commonwealth's evidence tends to prove. Thus, in reviewing this type of motion, we must consider the sufficiency of the evidence, gleaned from the entire record, in the light most favorable to the Commonwealth, the verdict winner here, as well as all reasonable inferences deducible therefrom. *Commonwealth v. Rawles, supra.* All the evidence admitted at trial, whether rightly or wrongly, must be assessed. *Commonwealth v. Maldonado,* 343 Pa.Super. 154, 494 A.2d 402 (1985).

■ We address the Commonwealth's appeal of the arrest of judgment and, accordingly, consider the first three contentions of error [2] raised by appellant in this respect.

The trial court, in its opinion accompanying the order partially arresting judgment, assumed that even if sufficient evidence existed that appellant penetrated the victim with his tongue, that conduct could not be the basis for a conviction of involuntary deviate sexual intercourse because that crime requires penetration by the penis (Opinion, pp. 13–14). Appellant argues that the evidence is insufficient to sustain the charge because the specific act involved, cunnilingus, does not fall within the scope of the statute purportedly limiting deviate sexual conduct to penetration of the mouth or the anus by the penis.

■ The theories postulated by the trial court and appellant are related, and we will consider them together. However, we disagree with both contentions and conclude that cunnilingus is an act proscribed by 18 Pa.C.S.A. § 3123.

The Crimes Code [3] provisions on sexual offenses are an amalgam of prior criminal law (judicial and statutory), the Model Penal Code promulgated by the American Law Institute in 1962 (Proposed Official Draft) and the recommendations of the Pennsylvania Bar Association's Special Commis-

2. As his initial claim of error, appellant presents the argument that the Commonwealth has waived its right to appeal the trial court's January 31, 1986, grant of the arrest of judgment motion because it did not file the notice of appeal until after the imposition of the February 14, 1986 judgment of sentence. This argument, which contains no reference to either statutory or case law, appears to be spurious. Case law cited in the body of this opinion, *supra,* allows the Commonwealth to appeal from an order arresting judgment. Under appellant's analysis, the judgment of sentence terminates the prosecution. An appeal by an aggrieved defendant, then, would be foreclosed unless he took it from a jury verdict or from the denial of post-trial relief. Of course, this would frustrate the purpose of Pa.R.App.P. 341(a), which states that "an appeal may be taken as of right from any *final* order of ... a lower court." (Emphasis added). Accordingly, we deem this claim devoid of merit. Moreover, we note that regardless of whether the Commonwealth took its appeal before or after judgment of sentence, it still had 30 days from the January 31, 1986, order to perfect an appeal to this court. Pa.R.App.P. 903(a).

3. Act of December 6, 1972, P.L. 1482, No. 334, effective June 6, 1973.

sion on Crime and Juvenile Delinquency in conjunction with the Joint State Government Commission. Comment, *Revision of the Law of Sex Crimes In Pennsylvania and New Jersey*, 78 Dick.L.Rev. 73, 77 (1973).

Section 213.2 of the Proposed Official Draft of the Model Penal Code, adopted in May 1962 by the American Law Institute, was originally presented in the same form as § 207.5 of Tentative Draft No. 4 at the May 1955 meeting of the Institute. The model statute reads as follows:

§ 213.2 Deviate Sexual Intercourse by Force or Imposition

(1) *By Force or Its Equivalent.* A person who engages in deviate sexual intercourse with another person, or who causes another to engage in deviate sexual intercourse, commits a felony of the second degree if:

(a) he compels the other person to participate by force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping, to be inflicted on anyone; or

(b) he has substantially impaired the other person's power to appraise or control his conduct, by administering or employing without the knowledge of the other person drugs, intoxicants or other means for the purpose of preventing resistance; or

(c) the other person is unconscious; or

(d) the other person is less than 10 years old.

(2) *By Other Imposition.* A person who engages in deviate sexual intercourse with another person, or who causes another to engage in deviate sexual intercourse, commits a felony of the third degree if:

(a) he compels the other person to participate by any threat that would prevent resistance by a person of ordinary resolution; or

(b) he knows that the other person suffers from a mental disease or defect which renders him incapable of appraising the nature of his conduct; or

(c) he knows that the other person submits because he is unaware that a sexual act is being committed.

The Institute also adopted Section 213.0, relating to definitions, at its May 1962 meeting. This section states in pertinent part:

§ 213.0 Definitions*

In this Article, unless a different meaning plainly is required:

.　　.　　.　　.　　.

(2) "Sexual intercourse" includes intercourse per os or per anum, with some penetration however slight; emission is not required;

(3) "Deviate sexual intercourse" means sexual intercourse per os or per anum between human beings who are not husband and wife, and any form of sexual intercourse with an animal.

In the Crimes Code of 1972, 18 Pa.C.S.A. § 3123 reads as follows:

§ 3123. Involuntary deviate sexual intercourse

A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(3) who is unconscious;

(4) who is so mentally deranged or deficient that such person is incapable of consent; or

(5) who is less than 16 years of age.

Section 3101 of the Crimes Code of 1972, 18 Pa.C.S.A. § 3101, defines "deviate sexual intercourse" and "sexual intercourse" in the following language:

"Deviate sexual intercourse." Sexual intercourse per os or per anus between human beings who are not husband and wife, and any form of sexual intercourse with an animal.

"Sexual intercourse." In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required.

Since neither § 3123 of the Crimes Code nor § 213.2 of the Model Code can be comprehended without resort to their respective definitions, we may liken § 3101 of the Crimes Code to § 213.0 of the Model Code because the legislature adopted, with virtually no change, the Model Code definitions of "deviate sexual intercourse" and "sexual intercourse."

Similarly, 18 Pa.C.S.A. § 3123 is modeled upon § 213.2 of the Model Penal Code. *See* Historical Note following § 3123. The Comment following § 207.5 of Tentative Draft No. 4 (later renumbered as § 213.2 and adopted at the Institute meeting in May 1962, see *supra*, p. 1145) declares that the conduct encompassing deviate sexual intercourse was broadened in the Model Code to include digital penetration of a female by another female. Due to the heinous nature of the criminal activity here, we do not discern any difference between penetration by the finger or by the tongue committed by a member of the same or a different sex absent any language in the statute to the contrary. Thus, by analogy, we conclude that penetration of the vagina by the tongue was contemplated as a criminal act by the drafters of § 213.2 of the Model Penal Code and by the Pennsylvania General Assembly by virtue of its adoption of the Model Code's definition of both deviate sexual intercourse and sexual intercourse and its ultimate passage of § 3123 in the form similar to the Model Code provision.

We have found only one authority since the enactment of § 3123 where the victim described in graphic terms the act committed upon her. *Commonwealth v. Stoner*, 284 Pa. Super. 364, 369, 425 A.2d 1145, 1147 (1981). There, the victim testified that she was forced to bend over the toilet in the women's bathroom. She then recited that the defendant "... ate me out and had intercourse with me." Even though the type of deviate sexual conduct was not there specifically labeled, nevertheless, as the trial judge aptly observed, sufficient evidence was gleaned from that testimony to support defendant's conviction of involuntary deviate sexual intercourse because "... we all understand what

that [activity] means." Id., 284 Pa.Superior Ct. at 369, 425 A.2d at 1147. However, our inquiry does not end here, for the *Stoner* Court did not squarely address the issue now before us.

Under the Penal Code of 1939, Act of June 24, 1939, P.L. 872, 18 P.S. § 4101 *et seq.*, the sodomy provision, § 4501, which was the forerunner of the present § 3123 (*see* Historical Note following 18 Pa.C.S.A. § 3123), was interpreted by this court to prohibit the act of cunnilingus. *Commonwealth ex rel. McDonnell v. Rundle*, 200 Pa.Super. 362, 188 A.2d 843 (1963); *Commonwealth v. Hornberger*, 199 Pa.Super. 174, 184 A.2d 276 (1962); *Commonwealth v. Bowes*, 166 Pa.Super. 625, 74 A.2d 795 (1950). These authorities have never been overruled by our Supreme Court and, consequently, remain the law today.

Former 18 P.S. § 4501 reads as follows:

§ 4501. Sodomy.

Whoever carnally knows in any manner any animal or bird, or carnally knows any male or female person by the anus or by os with the mouth, or whoever voluntarily submits to such carnal knowledge, is guilty of sodomy, a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or to undergo imprisonment, by separate or solitary confinement at labor, not exceeding ten (10) years, or both.

The definitional section of the 1939 Penal Code indicates that " 'carnal knowledge' shall be deemed complete upon proof of penetration only." 18 P.S. § 4103. Although we note the absence of this language in both § 3123, itself, and in § 3101, defining deviate and ordinary sexual intercourse, we also note that "carnal knowledge" under the former sodomy statute meant requiring penetration, whereas, in the present definitional statute, "sexual intercourse" requires "penetration, however slight ..." 18 Pa.C.S.A. § 3101. Additionally, the phrases "sexual intercourse" or "deviate sexual intercourse" are not mentioned in § 4103 or § 4501 of the 1939 Penal Code.

According to common accepted usage, "carnal knowledge" occurs where there is the slightest penetration of the sex organ. Black's Law Dictionary 268 (Rev. 4th ed. 1968). Similarly, "sexual intercourse" implies actual penetration of the sex organs. *Id.* at 1541 and includes "intercourse involving genital contact between individuals *other than penetration of the vagina by the penis.*" Webster's New Collegiate Dictionary 1055 (1979). (Emphasis added).

However, it is neither desirable nor appropriate to attempt to delineate all of the possible circumstances that might tend to demonstrate the types of sexual intercourse engaged in within the meaning of § 3123. That delineation should evolve by the development of a body of case law applying § 3123 (as it has been here construed) and the principles of construction set forth in the Crimes Code.

Thus, in enacting § 3101, defining ordinary and deviate sexual intercourse, the legislature, in its wisdom, merely substituted the phrase "sexual intercourse" for that of "carnal knowledge", since both require penetration for completion of the act. From this we discern no difference in interpretation, meaning or import between § 4501 of the 1939 Penal Code and § 3123 of the 1972 Crimes Code and therefore conclude that since cunnilingus was proscribed by the 1939 Penal Code (see cases cited *supra*, p. 1146), it is similarly forbidden by the 1972 Crimes Code. Since the cases construing former 18 P.S. § 4501 as including within its prohibitory scope the act of cunnilingus have never been overruled by our Supreme Court (see *supra*, p. 1146), a presumption arises that the General Assembly, in its subsequent enactment of § 3123, which deals with the same subject matter as former § 4501, intended the identical interpretation to be placed upon the language of § 3123. 1 Pa.C.S.A. § 1922(4).

In determining legislative intent, we look to similar legislation and the results of given interpretations. *Royal Indem. Co. v. Adams,* 309 Pa.Super. 233, 455 A.2d 135 (1983). Corollary to this postulate, if a court interprets a statute and the legislature fails to act to overturn or amend

that interpretation, the legislature is presumed to acquiesce in the court's interpretation. 2A C.D. Sands, *Statutes and Statutory Construction*, § 45.12 (1984).

Appellant argues that violation of § 3123 is limited to penile penetration of the mouth and the anus. We deem this argument meritless based upon the above analysis and contrary to the implication of *Commonwealth v. Hall*, 275 Pa.Super. 85, 418 A.2d 623 (1980), where we held that the defendant, a female, was not permitted to withdraw her plea of voluntary deviate sexual intercourse committed upon a 13 year old female victim.

Furthermore, appellant's contention that the phrase "emission is not required" in the definition of "sexual intercourse" limits penetration by the penis is equally flawed. The legislature, in defining "sexual intercourse", appropriately recognized that emission is not possible with respect to the act here in question.

■ Moreover, the word "per", used in § 3101 defining "deviate sexual intercourse" and "sexual intercourse" as "per os or per anus" has been accepted and defined as "by the means or agency of: THROUGH." Webster's, *supra* at 842. Since "per" is undefined in the Crimes Code, we construe this term according to its common, ordinary and approved usage. *Barasch v. Pa. Pub. Utl. Comm.*, 507 Pa. 430, 490 A.2d 806 (1985); *Commonwealth v. DeWan*, 181 Pa.Super. 203, 124 A.2d 139 (1956); 1 Pa.C.S.A. § 1903(a).

■ A common sense analysis of this definition leads us to conclude that deviate sexual intercourse can be that which occurs by the means or the agency of the mouth (or tongue) in penetrating the vagina, i.e., the mouth (or tongue) is here utilized as the penetrating agent, thus embracing the statutory exclusion of the necessity for emission in § 3101's definition of sexual intercourse. Any other interpretation would result in an absurd construction being placed upon the statute which the General Assembly, in enacting legislation, is presumed never to intend. *Lehigh Valley Coop. Farmers v. Com., Bur. Employment Securi-*

*ty, Dept. of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982); *Zimmerman v. O'Bannon,* 497 Pa. 551, 442 A.2d 674 (1982); 1 Pa.C.S.A. § 1921(c)(1).

Since we have already determined that the act which appellant committed on the victim and for which he stood convicted, prior to the grant of the arrest of judgment on this charge, constitutes deviate sexual intercourse as defined by the legislature and applicable case law, we deem appellant's contention that his conduct rose to no more serious a transgression than indecent assault equally faulty because that crime lacks the element of sexual intercourse or penetration which is essential to the commission of the offense of rape. *Commonwealth v. Grassmyer,* 237 Pa.Super. 394, 352 A.2d 178 (1976); *Commonwealth v. Carpenter,* 172 Pa.Super. 271, 94 A.2d 74 (1953). *See also Commonwealth v. Capers,* 340 Pa.Super. 136, 489 A.2d 879 (1985) (after removing victim's clothing and touching parts of her body, defendant's statement to her that he should rape her sustained conviction for indecent assault) and Comment, *Revision of the Law of Sex Crimes in Pennsylvania and New Jersey,* 78 Dick.L.Rev. 73, 108 (1973).

■ The intention of the General Assembly may also be ascertained by considering the necessity for the legislation, the remedy sought, the object to be attained by enactment, any former law and interpretations of the statute. *See* 1 Pa.C.S.A. § 1921(c).

We have already noted elsewhere in our discussion that the former sodomy statute (18 P.S. § 4501) and present § 3123 are identical in the type of conduct proscribed and in their respective elements of proof. The cases which were cited earlier (p. 189, *supra*) and decided under the former sodomy statute are still viable today.

■ As to necessity and purpose of the involuntary deviate sexual intercourse statute, the Commonwealth, within the proper bounds of its police power, does have a strong interest in shielding members of the public from unwelcome submission to sexual contact and in protecting

minors from being sexually abused by adults. *See Commonwealth v. Bonadio,* 490 Pa. 91, 415 A.2d 47 (1980), and *Commonwealth v. Maute,* 336 Pa.Super. 394, 485 A.2d 1138 (1984). We find this consonant with the general objectives set forth in the Crimes Code of 1972.

Purposes

The general purposes of this title are:

(1) To forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interest.

(2) To safeguard conduct that is without fault from condemnation as criminal.

(3) To safeguard offenders against excessive, disproportionate or arbitrary punishment.

(4) To give fair warning of the nature of the conduct declared to constitute an offense, and of the sentences that may be imposed on conviction of an offense.

(5) To differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization in their treatment.

18 Pa.C.S.A. § 104.

The Crimes Code of 1972, of which § 3123 is a part, represented a significant departure from the prior criminal law of Pennsylvania which had been embodied in the Penal Code of 1939. The Crimes Code worked major substantive changes in the criminal law and did not simply recodify and reclassify existing laws, although the Crimes Code did draw from the concepts of and experience under the Penal Code of 1939 and the common law. *Three Prosecutors Look At The New Pennsylvania Crimes Code,* 12 Duq.L.Rev. 793, 804 (1974).

One of the drafters of the Crimes Code, Sheldon S. Toll, has remarked that perhaps the most significant departure from the Penal Code of 1939 and the early common law was the rejection of the very strict approach to interpretation of substantive criminal statutes in favor of a more common sense and flexible approach. Toll, *Criminal Law Reform*

*in Pennsylvania: The New Crimes Code,* 78 Dick.L.Rev. 1, 3 (1973). As appellant purports to demonstrate here, the obvious result of the inflexibility of the common law requirement of strict construction of penal statutes could result in the acquittal of a defendant because he did not "technically" commit the crime of which he was accused. To subvert this inequity, § 105 of the Crimes Code was enacted. It provides:

§ 105 Principles of Construction

The provisions of this title shall be *construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes* stated in this title *and the special purposes of the particular provision involved.* The discretionary powers conferred by this title shall be exercised in accordance with the criteria stated in this title and, in so far as such criteria are not decisive, to further the general purposes stated in this title.

18 Pa.C.S.A. § 105 (emphasis added).

Even before the passage of § 105, Pennsylvania appellate courts opined that strict construction of penal statutes should not be allowed to defeat the policy and purpose underlying enactment. *See Commonwealth v. Mason,* 381 Pa. 309, 112 A.2d 174 (1955); *Commonwealth v. Levy,* 197 Pa.Super. 297, 178 A.2d 858 (1962). A reasonable view of the statute must be taken such as would effectuate the manifest intent and purpose of the legislature. *See Commonwealth ex rel. Dugan v. Ashe,* 342 Pa. 77, 19 A.2d 461 (1941); *Commonwealth v. Moore,* 343 Pa.Super. 242, 494 A.2d 447 (1985). The rule of strict construction does not mandate that the words of a criminal statute be relegated to their narrowest meaning permissible. *See Commonwealth v. Duncan,* 456 Pa. 495, 321 A.2d 917 (1974). Indeed, many years prior to passage of the Crimes Code of 1972, our Supreme Court, recognizing the necessity for flexibility in changing times, observed, "It is of course true ... that penal statutes must be strictly construed ... but

that also means ... that they must be construed with common sense." *Commonwealth ex rel. Dugan v. Ashe, supra* 342 Pa. at 80, 19 A.2d at 462; *see also Commonwealth v. Mason, supra; see, generally,* 3 C.D. Sands, *supra,* § 59.06.

With the foregoing in mind, we believe that a reasonable, common sense reading of § 3123, together with the definitional language contained in § 3101, leads to no other conclusion but that the legislature intended the act of cunnilingus to fall within the class of crimes constituting involuntary deviate sexual intercourse.

█ We would next consider that appellant's constitutional claim regarding the subject statute on the basis of a void-for-vagueness challenge [4] is preempted by our conclusion that cunnilingus is an act prohibited by 18 Pa.C.S.A. § 3123. However, we believe that since the matter is properly before us, a discussion of the issue is in order.

It is well settled that "[a] criminal statute must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction. Statutes which are so vague that they fail to provide such notice violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Commonwealth v. Heinbaugh,* 467 Pa. 1, 5, 354 A.2d 244, 246 (1976). *See also Commonwealth v. Barnhart,* 345 Pa.Super. 10, 497 A.2d 616 (1985). A statute will be deemed violative of due process if the terms of the statute "... are so vague that men of common intelligence must necessarily guess at its

**4.** Because appellant preserved this issue for review in his supplemental Motion in Arrest of Judgment which he timely filed in the trial court and because he raised it in his brief to this Court on his cross appeal from the judgment of sentence on his conviction of attempted rape, we deem this matter properly before us. While we note that appellant has failed to notify the Attorney General of Pennsylvania of his constitutional challenge, in the interest of judicial economy and because Pa.R.A.P. 521(a) exempts a challenging party from the notification requirement where the Commonwealth is already in the litigation, we do not deem this claim waived and will, accordingly, address the merits thereof. *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438 (1985).

meaning and differ as to its application...." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). However, the constitutional prohibition against vagueness does not invalidate every statute which could have been drafted with greater precision. Due process requires only that the law give sufficient warning so that individuals may conform their conduct so as to avoid that which the law forbids. *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

In addition to the aforementioned constitutional standards, this Court is mindful of the fact that "... a legislative enactment enjoys a presumption in favor of its constitutionality and will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution. All doubts are to be resolved in favor of constitutionality." *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 111, 394 A.2d 932, 937 (1978); *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983). *See also Commonwealth v. Sterling*, 344 Pa.Super. 269, 496 A.2d 789 (1985); 1 Pa.C.S.A. § 1922(3). The burden of disproving that presumption belongs to the one who challenges it. *Commonwealth v. Mikulan, supra, citing Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981), and *Commonwealth v. Barnes and Tucker Co.*, 472 Pa. 115, 371 A.2d 461 (1977).

In the exercise of its police powers, the Commonwealth, through the General Assembly, has enacted a statute proscribing involuntary deviate sexual intercourse. That it has a viable interest in the protection of the safety of its citizens cannot be disputed. Balanced against this interest is appellant's right to due process. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbi-

trary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Reasonable notice of the prohibited conduct is all that is required. Statutes are not "to be tested against paradigms of draftmanship.... Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct." *Commonwealth v. Heinbaugh, supra* 467 Pa. at 6, 354 A.2d at 246; *Commonwealth v. Mikulan, supra.*

In *Rose v. Locke, supra,* Tennessee's statute prohibiting the commission of "crimes against nature" [5] withstood a void-for-vagueness challenge that the phrase "crimes against nature" did not encompass cunnilingus because respondent (defendant) could not be held "criminally responsible for conduct which he could not reasonably understand to be proscribed." 423 U.S. at 49, 96 S.Ct. at 244. In rejecting this challenge, the U.S. Supreme Court, referring to 4 W. Blackstone Commentaries *216, considered the phrase "crimes against nature" in the perspective of its time-honored use in describing criminal offenses at common law, now codified in state penal codes as broadly embracing sodomy, beastiality, buggery, fellatio and cunnilingus, and among English-speaking people for many years, and concluded that any reasonable person, using a common sense approach, could readily ascertain what particular acts fall within that phrase. Respondent there could not therefore argue that the act specifically charged to him, cunnilingus, had never before been considered as having been included within the purview of the phrase in question. *Rose v. Locke, supra.*

**5.** At the time of the *Rose* decision and still today, this statute reads as follows:

Crimes against nature.—Crimes against nature, either with mankind or any beast, are punishable by imprisonment in the penitentiary not less than five (5) years nor more than fifteen (15) years. [Code 1858, § 4843 (dcriv. Acts 1829, ch. 23, § 17); Shan., § 6764; Code 1932, § 11184; T.C.A. (orig. ed.), §§ 39–707, 39–3714; Acts 1982 (Adj. S.), ch. 568, § 3.].

Tenn.Code Ann. § 39–2–612 (1982).

When a state appellate court has previously construed a statute to encompass the same act with which a defendant presently stands charged, this forecloses any challenge to the statute's lack of fair warning for factually identical subsequent conduct, although the absence of any earlier interpretation does not preclude mounting a successful prosecution under a broad interpretation withstanding an attack on lack of fair notice or warning in the statute. *Rose v. Locke, supra.*[6] *See generally* C.D. Sands, *supra* § 45.12. The vagueness or not of a state statute must be judged in light of prior judicial constructions of the statute. *Wainwright v. Stone,* supra.

> For the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation "we must take the statute as though it read precisely as the highest court of the State has interpreted it." ....
> When a state statute has been construed to forbid identifiable conduct so that "interpretation by [the state court] puts these words in the statute as definitely as if it had been so amended by the legislature," claims of impermissible vagueness must be judged in that light.

*Id.* 414 U.S. at 23, 94 S.Ct. at 192.

The *Wainwright* court held that Florida's "crimes against nature" statute withstood constitutional muster against a void-for-vagueness attack challenging cunnilingus as proscribed activity within the terms of the statute.

 Appellant argues that § 3123 is unconstitutionally vague because it does not give fair notice that cunnilingus is a prohibited act. Based upon the foregoing analysis, we find his position tenuous. To entertain the notion that a person of ordinary intelligence does not comprehend the meaning of "deviate sexual intercourse" is to walk blindly in the wake of the stark realities of contemporary sexual

6. Cases upholding Tennessee's "crimes against nature" statute (see note 5, *supra* ) against a void-for-vagueness challenge that the subject statute did not encompass cunnilingus are: *Young v. State,* 531 S.W.2d 560 (Tenn.1975); *Lundy v. State,* 521 S.W.2d 591 (Tenn.Crim.App. 1975); *Locke v. State,* 501 S.W.2d 826 (Tenn.Crim.App.1973); *Stephens v. State,* 489 S.W.2d 542 (Tenn.Crim.App.1972).

mores. Moreover, our own Supreme Court has not spoken on this issue since our decisions in *Com. ex rel. McDonnell v. Rundle, supra; Commonwealth v. Hornberger, supra* and *Commonwealth v. Bowers, supra,* holding that cunnilingus is prohibited under the former sodomy statute, 18 P.S. § 4501, and the legislature has not chosen to alter our holdings in that regard in its subsequent enactment of § 3123 which, we determined earlier, similarly bans that act. *See* 1 Pa.C.S.A. 1922(4). *See also* 2A C.D. Sands, § 45.12, *supra.* Silence on the part of our Supreme Court and the failure of the General Assembly to change our interpretation signify acquiescence in our determination that cunnilingus, in the context of a criminal statute punishing involuntary deviate sexual intercourse, is forbidden in this Commonwealth.

■ Turning to the record before us, we view it, as we must, in its entirety and conclude that sufficient evidence of appellant's activity and conduct toward the victim on the night here in question exists to sustain his conviction for involuntary deviate sexual intercourse and to reverse the trial court's grant of appellant's motion to arrest the judgment on that charge.

Appellant telephoned the victim on the evening in question and told her that he wanted to come to her home to discuss a problem he was having with his girlfriend, Lisa Testa (N.T. 27). The victim replied that it was late and that she was tired but that he could visit only if he stayed a little while (N.T. 28).

The victim testified that she first met appellant at Mellon Bank where she was a receptionist and where appellant was a security guard (N.T. 24), that she was Lisa's friend (N.T. 25), that she had set up a date for appellant and Lisa and that these two began dating (N.T. 25–26). Appellant had previously asked the victim for a date which she refused because she had no interest in him other than as a friend (N.T. 26, 47, 50), but she wanted to help him with his problem with Lisa because they were friends (N.T. 28).

When appellant arrived at the victim's apartment, he asked her to go out for a drink. She replied that she did not drink and did not want any drinking in her home because her baby was living with her (N.T. 28). She also did not permit him to smoke (N.T. 29). After he had requested a glass of water, they went into the livingroom and sat on the couch (N.T. 29) to watch the news (N.T. 30). They were seated at either end of the couch (N.T. 30, 31) when he began to tell her of his problems with Lisa (N.T. 30). They continued to watch the news until it was over, (N.T. 30) or for about 20 to 30 minutes (N.T. 62).

Appellant then stated that he no longer wanted to speak about Lisa but rather about the victim and himself (N.T. 30). The victim replied that there was nothing about which to talk in that respect, whereupon he began to kiss her, and she then told him to stop (N.T. 31, 63). He proceeded to pull up her blouse and bra and kiss her breasts (N.T. 32, 34, 64, 70). She again asked him to stop (N.T. 34, 67) and moved farther away from him (N.T. 31).

He tried to kiss her lips. When she turned away, he kept kissing her neck, and she attempted to push him away (N.T. 32). When the victim attempted to get up from the couch, appellant grabbed her belt loop on her jeans and threw her back on the couch (N.T. 32), whereupon he pushed her down and pinned her arms beneath her (N.T. 32). He attempted to mount the victim and kept kissing her (N.T. 32, 34). She testified that she was lying down by force when he was kissing her breasts and kept asking him to stop (N.T. 34, 70).

Appellant, by that time, had unfastened the victim's jeans (N.T. 35, 67–68, 69) and penetrated her vagina with his finger (N.T. 44). The victim then testified as to the specific act here in question:

Q. Did he get the zipper down?

A. Yes.

Q. What happened then, Tammy?

A. He had pulled down my underwear and my jeans at the same time. And he had—he put his head down and started—

Q. Started what?

A. He had oral sex.

Q. I'm sorry?

A. He started sucking on my vagina.

(N.T. 35)

. . . . .

Q. What did you do when he started licking you there?

A. I started crying. I didn't know why he would do something like that and I was scared.

Q. Did you say anything to him?

A. Yes.

Q. What did you say?

A. I kept asking him to stop.

Q. Where were your hands at this point?

A. One was behind my back and the other one I had got loose and I was pulling on his hair trying to lift his head.

Q. Were you able to do that?

A. No.

(N.T. 36–37).

The victim also testified that she was unable to push him off or wrestle with him because he was five inches taller and 30 pounds heavier than her 5'2", 110 pound frame. (N.T. 75). However, she finally succeeded in reaching over to the floor for the glass of water which appellant had earlier placed there and threw the water in his face (N.T. 38). Appellant then jumped up (N.T. 38). The victim told him he had five minutes to leave her apartment and immediately fled to her bedroom, whereupon appellant left (N.T. 39).

■ The record here does more than merely suggest that the victim was forcibly compelled to submit to appellant's act of oral sex on her. Her description of appellant's conduct was sufficiently lucid to enable a person of ordinary intelligence to comprehend the heinous nature of the

acts performed on her, *see Commonwealth v. Stoner, supra,* and to establish the element of penetration. *Commonwealth v. Hornberger, supra.* Furthermore, the position of appellant relative to the victim during the commission of the offense admits of circumstantial proof of penetration. *Commonwealth v. Bowes, supra.*

From this we conclude that the Commonwealth produced ample evidence to demonstrate that appellant's acts established the requisite elements of the crime of involuntary deviate sexual intercourse beyond a reasonable doubt. On that basis, we reverse that portion of the trial court's order arresting judgment on appellant's conviction of involuntary deviate sexual intercourse and reinstate the jury verdict on that charge. *Commonwealth v. Rawles, supra.*

## II. *Appellant's Cross-Appeal* [7]

■■ Appellant raises several trial errors, styled in terms of ineffectiveness of trial counsel, which were properly preserved in appellant's supplemental post-verdict motion for a new trial filed by new post-verdict counsel who is also appellate counsel. In this context, allegations of trial counsel's ineffectiveness should be initially set forth at a hearing in the trial court prior to assertion, on direct appeal, of trial errors couched in terms of ineffective stewardship so that a reviewing court may conclude whether or not trial counsel may have been ineffective. *Commonwealth v. Johnson,* 325 Pa.Super. 186, 472 A.2d 710 (1984).

Instantly, the hearing on trial counsel's ineffectiveness focused on the following claims of defective

7. Appellant does not challenge to this Court the sufficiency of the evidence relating to his conviction for attempted rape. The errors he claims in terms of ineffectiveness of trial counsel relate to the denial of his motions for a new trial on this charge. While appellant does raise the sufficiency issue on the attempted rape charge in his supplemental motion to arrest the judgment, he has failed to brief it to this Court. We restrict ourselves to addressing issues set forth in the Statement of Questions Involved in appellant's brief and cannot entertain any issue not raised therein. *See Commonwealth v. Whiteman,* 336 Pa.Super. 120, 485 A.2d 459 (1984); *Rago v. Nace,* 313 Pa.Super. 575, 460 A.2d 337 (1983); Pa.R.App.P. 2116(a).

representation [8]—failure to object to the omission of a re-
nunciation defense charge; failure to object to the court's
omission to charge the jury on lesser included offenses;
trial counsel's introduction into the trial that the victim had
obtained a weapon during the incident; and failure to
request certain jury instructions or to object to omission of
same.

We begin by noting that the standard for deter-
mining counsel's ineffectiveness is based upon a presump-
tion of competent stewardship and that the burden of
proving otherwise is on the defendant. *Commonwealth v.
Diggs,* 351 Pa.Super. 444, 506 A.2d 431 (1986). Counsel's
assistance is deemed effective once it has been determined
that the course chosen had some reasonable basis designed
to effectuate the client's interests, not whether other alter-
natives not chosen were more reasonable after a hindsight
assessment of the record. *Commonwealth v. Bennett,* 512
Pa. 525, 517 A.2d 1248 (1986); *Commonwealth v. Griffin,*
511 Pa. 553, 515 A.2d 865 (1986), *citing Commonwealth ex
rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349
(1967).

To make out a claim of ineffectiveness, a defendant
must first demonstrate that the underlying issue is of
arguable merit. If so, then inquiry must be made whether
the course chosen by counsel was not reasonably designed
to protect his (the client's) best interests and whether coun-
sel's dereliction so prejudiced the client as to deny him the
right to a fair trial. *Commonwealth v. Diggs, supra;
Commonwealth v. Blagman,* 350 Pa.Super. 367, 504 A.2d
883 (1986). *See also Commonwealth v. Bennett, supra;
Commonwealth v. Griffin, supra.*

Appellant's first ineffectiveness issue concerns the
failure of his trial counsel to object to the admissibility of

**8.** The hearing focused on one other allegation of ineffectiveness which
has not been preserved and is not now before us. Appellant's counsel
also only briefly mentioned the objection to admission of hearsay
claim at the hearing stating that it had been briefed to the post-verdict
court. This issue has been properly preserved for our review.

hearsay statements by Commonwealth witness Marlene Arnold concerning a phone conversation she and her daughter, the victim, had immediately after the latter's episode with appellant, by Commonwealth witnesses Patrick and Craig Pryor, the victim's brothers, and by Angelina Mason, her neighbor, regarding the victim's conversations with them on the night in question concerning appellant's conduct towards her. The trial court concluded that the statements and conversations of the victim with these witnesses were admissible under the excited utterance exception to the hearsay rule.

We have defined "excited utterance" in the following terms:

> [It must be] a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Pronkonskie*, 477 Pa. 132, 137, 383 A.2d 858, 860 (1978). Accordingly, we adopt the reasoning of the trial court on this issue (Trial Court Op. pp. 2–4).

 As to appellant's complaint regarding the admission of the telephone conversation between Marlene Arnold and the victim prior to the occurrence, arguably, this testimony is not hearsay because the declarant/victim was examined on direct and was subjected to cross-examination on this matter. *Commonwealth v. Galloway*, 336 Pa.Super. 225, 485 A.2d 776 (1984). Even so, the error of admitting a hearsay statement will be deemed harmless if it did not affect the jury's verdict beyond a reasonable doubt. Such a finding may be made if the prejudice accruing to appellant is *de minimis* when compared to the Commonwealth's overwhelming evidence pointing to guilt. *Commonwealth v. Brady*, 338 Pa.Super. 137, 487 A.2d 891 (1985).

Instantly, the testimony of the victim regarding the events in her apartment leading up to the actual attack and her description of the attack in specific terms, which was believed by the jury, was alone sufficient to support appellant's conviction for attempted rape despite contrary evidence from appellant. *Commonwealth v. Stoner, supra. Cf. Commonwealth v. Flynn,* 314 Pa.Super. 162, 460 A.2d 816 (1983) (no medical testimony needed to corroborate rape victim's testimony, if believed, to support rape conviction). Since we cannot conclude that the exclusion of the testimony of the telephone conversation between the victim and her mother would have culminated in a different result for appellant, we hold this error, if any, harmless and deem appellant's ineffectiveness claim meritless. Thus, no further inquiry is necessary as to the competence of counsel's assistance in this regard, *Commonwealth v. Bennett, supra; Commonwealth v. Griffin, supra,* for counsel will not be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Diggs, supra; Commonwealth v. Blagman, supra. See also Commonwealth v. Bennett, supra; Commonwealth v. Griffin, supra.*

Appellant next contends that counsel was ineffective in not requesting certain instructions and in failing to object to the impropriety of other instructions.

First, appellant claims that trial counsel was ineffective in failing to request the *falsus in uno, falsus in omnibus* instruction. Again, we adopt the rationale of the trial court (Op. p. 6) in this regard because the record does not disclose willful and corrupt falsehood on the part of the victim but merely self-contradiction, at most, when she failed to recall on direct examination that appellant had digitally penetrated her vagina prior to performance of oral sex and the attempted rape (N.T. 44) and that she had gone into the kitchen to obtain a knife after the incident (N.T. 86).

In assessing the credibility of a witness, it is within the province of the trier of fact to weigh it in accordance with the evidence adduced. *Commonwealth v. Shaver,* 501

Pa. 167, 460 A.2d 742 (1983). The trier of fact in this case, the jury, in passing upon the credibility of a witness and in determining the weight to be accorded to the evidence, is free to believe all, part or none of the evidence. *Commonwealth v. Claypool,* 508 Pa. 198, 495 A.2d 176 (1985); *Commonwealth v. Shirey,* 343 Pa.Super. 189, 494 A.2d 420 (1985). For this reason, we also reject appellant's claim that counsel was ineffective in not objecting to the charge that appellant had a vital interest in the outcome of the case. We have held this type of jury instruction to be proper. *Commonwealth v. Dolny,* 235 Pa.Super. 241, 342 A.2d 399 (1975). The instantly complained of charge reads as follows:

Now, the defendant took the stand as a witness in this case. In considering the defendant's testimony you are to follow the general instructions that I just gave you for judging the credibility of any witness. And you should not disbelieve the defendant's testimony merely because he is the defendant. In weighing his testimony; [sic] however, you may consider the fact that he has a vital interest in the outcome of this trial. *You should take the defendant's interest into account along with all of the other facts and circumstances in the case in deciding on what credibility his testimony deserves.*

(N.T. 259) (Emphasis added).

Here, we perceive no error in the charge and therefore determine that appellant's ineffectiveness claim is meritless. *Commonwealth v. Bennett, supra; Commonwealth v. Griffin, supra.* Counsel will not be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Diggs, supra; Commonwealth v. Blagman, supra. See also Commonwealth v. Bennett, supra; Commonwealth v. Griffin, supra.*

■ It is also well settled that even the uncorroborated testimony of a prosecution witness may be sufficient to convict despite contrary evidence from the defense if the trier of fact, based on the evidence before it, chooses to lend credibility to the former. *Commonwealth v. Stoner, su-*

*pra; Commonwealth v. White,* 341 Pa.Super. 261, 491 A.2d 252 (1985). Hence, appellant's assertion that trial counsel failed to object to the trial court's charge that appellant could be convicted on the testimony of the victim, alone, (N.T. 260–61) is equally frivolous, *Commonwealth v. Bennett, supra; Commonwealth v. Griffin, supra,* and counsel will not be deemed ineffective here for his omission to raise such a baseless objection. *Id; Commonwealth v. Diggs, supra; Commonwealth v. Blagman, supra.*

 Appellant's next two contentions of ineffective trial stewardship concern the failure to request or to object to the omission of instructions on lesser included offenses and the defense of renunciation of the attempted rape charge. We accord no merit to either. With respect to the former, appellant argues that counsel was ineffective in failing to request or to object to the omission of a charge on the crimes of indecent assault, indecent exposure, simple assault and harassment, in addition to involuntary deviate sexual intercourse and attempted rape. Appellant was only charged with the latter two offenses. We agree with the lower court's reasoning that counsel's omission to act here was a legitimate defense strategy designed not to inject into the minds of the jurors some suggestion of compromise or alternative to acquittal on the attempt charge.

> So lawyers quite properly exclude these lesser included offenses on a regular basis, because you offer them a lesser included offense and that is exactly what you are going to get, a conviction on it. You give them an area of compromise that otherwise isn't in the case. And I think that is quite proper strategy.

(Ineffectiveness Hearing Testimony 28–29).

 In this context we note that if the substance of the evidence would logically culminate in no result other than either acquittal or a finding of guilt on the subject charge, then no instruction is necessary on any alternate lesser offense to which the evidence produced does not relate. *Commonwealth v. Showalter,* 275 Pa.Super. 1, 418 A.2d 580 (1980). *See also Commonwealth v. Coleman,* 344

Pa.Super. 481, 496 A.2d 1207 (1985) (trial court not required to charge upon law having no relation to evidence presented at trial).

■ The trial court also viewed, correctly, we think, the omission to request or to object to the failure to charge the jury on the defense of renunciation as another legitimate defense tactic which was aimed at acquittal of the attempt charge. It further reasoned that giving this charge would serve no purpose but to impress upon the jurors' minds the notion that appellant may well be guilty of the charge and that this instruction would do nothing more for appellant but to frustrate or at least weaken his stance on his innocence of the charge against him.

■ We agree. Appellant is not entitled to a new trial when the alternative chosen, in counsel's view, offered a potential for success substantially greater than another course not pursued, without prejudice to the client. *Commonwealth v. Johnson*, 347 Pa.Super. 93, 500 A.2d 173 (1985). If the alternative not selected offered a substantially greater potential for success than the tactic utilized, only then does ineffectiveness occur. *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984).

Lastly, appellant contends that trial counsel was ineffective for bringing out on recross examination of the victim that she had obtained a knife from the kitchen after the subject incident.

■ We again agree with the trial court that trial counsel's introduction of this fact into the case served as a legitimate trial strategy to discredit the victim's trial testimony by demonstrating an inconsistency with her prior testimony given at the preliminary hearing.

At the ineffectiveness hearing, trial counsel, examined by the trial prosecutor, testified as to the reason for this tactic:

Q. Prior to the time you asked these questions about the knife, had Miss Pryor been questioned before about whether or not she had gotten a weapon?

A. I believe she had been questioned at the preliminary hearing, by you and by me. She had been questioned by you in the Commonwealth's case. I asked her on cross-examination about the knife. And I believe on recross I had again questioned her about a weapon. Not specifically a knife. Towards the tail end of her testimony she mentioned a knife for the first time ever. And I just left it at that. That it was incredible that she couldn't remember that after four or five interrogations.

Q. But, on direct when I asked her about a weapon, what was her answer at trial, if you recall?

A. Her answers also were until my final recross, no weapon.

Q. And then on recross she brought out about the knife?

A. She discovered that there was a knife in her kitchen, yes.

Q. Now at that point, when you conducted the recross of Miss Pryor, what was your evaluation of whether or not she was being a credible witness at the time she was testifying?

A. My evaluation was that she was incredible and I felt the jury would feel the same way.

. . . . .

Q. What about her demeanor on the stand as you watched it during the trial?

A. Incredible.

Q. You did not feel at that time that she was in any way believable; is that correct?

A. I felt that she was incredible.

Q. Would you view her answers about this knife as an inconsistency with her prior testimony?

A. Yes.

(Ineffectiveness Hearing Testimony 10–12).

From the record of this hearing, it appears that trial counsel offered the introduction of the testimony concerning the knife as a viable trial technique believed to have a substantially greater potential for acquittal of appellant

than its non-introduction without prejudicing him. *Commonwealth v. Johnson, supra.* Thus, no ineffectiveness occurred here since the alternative not selected (i.e., the non-introduction of the knife testimony) did not offer a greater potential for acquittal. *Commonwealth v. Clemmons, supra.* The course here chosen by counsel had some reasonable basis designed to effectuate appellant's interests, i.e., acquittal of the attempted rape charge, and did not so prejudice appellant's right to a fair trial. *Commonwealth v. Diggs, supra; Commonwealth v. Blagman, supra.* We do not perceive it our role to make a hindsight evaluation of the record to determine whether alternatives not selected were more reasonable so long as the course chosen here, as we have stated, had some reasonable basis to promote appellant's interests. *Commonwealth v. Bennett, supra; Commonwealth v. Griffin, supra.*

We therefore affirm the judgment of sentence for appellant's conviction of attempted rape.

Order arresting judgment on the charge of involuntary deviate sexual intercourse reversed and vacated and jury verdict reinstated on this charge. Judgment of sentence on the charge of attempted rape affirmed. Jurisdiction relinquished.

POPOVICH, J., files a concurring and dissenting opinion.

POPOVICH, Judge, concurring and dissenting:

I have no dispute with the Majority's determination that the prosecution is afforded the right to appeal the trial court's arrest of judgment, since such a ruling is an appealable order. See Dissenting Opinion by Popovich, J. in *Commonwealth v. Williams,* 360 Pa.Super. 23, 519 A.2d 971 (1986), citing *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) for an identical proposition. Nor do I find fault with the affirmance of the judgment of sentence for attempted rape.

However, on the question of whether the conduct by the appellee upon the victim (cunnilingus) falls within the perimeters of 18 Pa.C.S. § 3123 (Involuntary Deviate Sexual Intercourse), I am not convinced it does.

§ 3123 makes specific reference to the act(s) proscribed, e.g., deviate sexual intercourse. This term of art is defined in the Crimes Code at § 3101 to encompass: "Sexual intercourse per os or per anus between human beings who are not husband and wife, and any form of sexual intercourse with an animal." Further, in the same section, "sexual intercourse" is described to constitute: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required."

The Majority's efforts to extrapolate the inclusion of the proscribed conduct charged against the appellee from a recitation of the historical basis for the Crimes Code, i.e., the Penal Code of 1939 and the Model Penal Code of the American Law Institute, is detrimental as much as it is beneficial to its objective.

For instance, the referred to § 213.2 of the Proposed Official Draft of the Model Penal Code, and the applicable definitional provisions (§ 213.0), along with the earlier mentioned § 3123 of the Crimes Code and the relevant definitional terms there do not make *any* reference to the conduct sought to be included within § 3123. The Majority does not dispute this.

Its reference to the predecessor to § 3123 is unavailing since that statute (18 P.S. § 4501—Sodomy) was more broadly worded by the inclusion of the terms "carnal knowledge" as the catch-all phrase, and its subsequent interpretation to include cunnilingus was not repugnant to the principles associated with statutory construction, i.e., give effect and meaning to the laws enacted by the Legislature when possible and do not find them to be, e.g., unconstitutionally void for vagueness absent evidence that is clear on the subject.

However, instantly, the statute in question is more narrowly circumscribed by definitional language, which, when viewed in toto with the remainder of Chapter 31 covering "Sexual Offenses", would result in the appellee's acts of sexual conduct to be violative of the indecent assault statute, 18 Pa.C.S. § 3126. It reads in relevant part:

A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty of indecent assault, a misdemeanor of the second degree, if:

(1) He does so without the consent of the other person;

In turn, "indecent contact" is elaborated upon as to its meaning by the Legislature, again, in the definitional provision of the Crimes Code to include: "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person."

Giving the statutes their reasonable and common sense meaning leads this writer to conclude that the appellee's conduct falls squarely and more logically within the ambit of § 3126. This is accomplished without any strained analysis of the law and its historical antecedent.

Accordingly, finding that the Majority's trek through the preceding law and its underpinnings is unwarranted and unconvincing, I cannot embrace its logic. To do so would overlook the obvious proscription of the appellee's conduct by § 3126. One need not proceed any further in determining under which provision of the law the appellee's acts were violative of. The Commonwealth, having failed to charge the accused with such a violation, the jury's verdict should not stand. Thus, I would affirm the trial court's arrest of judgment on the offense of involuntary deviate sexual intercourse.

Nonetheless, the factual scenario under scrutiny here, in light of the indecent assault statute, leads me to conclude, under a lesser-included-offense analysis, that the trial court would have the authority to find the accused guilty of such a lesser charge. See, e.g., *Commonwealth v. Adams*, 333

Pa.Super. 312, 482 A.2d 583 (1984); *Commonwealth v. Temple*, 258 Pa.Super. 269, 392 A.2d 788 (1978).

The appellee could not complain that he was not put on notice by the charge of involuntary deviate sexual intercourse of his potential liability under the indecent assault statute since the facts, albeit do not rise to the level of "intercourse", they unquestionably establish indecent contact done for the purpose of arousing or gratifying sexual desire.

Thus, although I do not join in the affirmance of the sentence for involuntary deviate sexual intercourse, the appellee could be found guilty of indecent assault. The fact that the lesser offense (indecent assault) is subsumed by the greater offense (involuntary deviate sexual intercourse) would discount any argument proffered by the accused that he was not put on notice of the potential liability under the former. Thus, both notice and subsumption of the lesser charge by the greater charge are present to justify such a result.

Accordingly, finding that I can only join in a portion of the majority's opinion, I respectfully dissent in part.