660 A.2d 25

**Camillo DeLELLIS, Appellant,**

v.

**BOROUGH OF VERONA and Borough of Verona Police Pension Fund, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1994.

Decided June 20, 1995.

4

6

Stanford A. Segal, Gatz, Cohen, Segal & Koerner, P.A., Pittsburgh, for appellant.

Peter B. Skeel and John J. Edson, Swensen, Perer & Johnson, Pittsburgh, for appellees.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The sole issue raised in this appeal is whether subsection (ii) of Section 771 of the Police Pension Act (the "Act")[1] authorizes a municipal police pension fund to reduce a 65–year–old retired police officer's pension benefits to 75% of his primary

1. 53 P.S. § 771.

social security benefits where the retiree has retired from the police force but has elected to continue working for another employer. For the reasons set forth below, we find that the Act does not permit such a reduction and, on that basis, we reverse the ruling of the Commonwealth Court.

When appellant turned age 62, he retired from the Borough of Verona's police force and began receiving pension benefits he was due under the retirement plan administered by the Borough of Verona Pension Fund (the "Fund"). However, despite his early retirement from the police force, appellant continued to work as a private-duty security guard, thereby making him ineligible to receive federal social security benefits until he reached age 70, at which age he would receive full social security benefits without regard to his employment status. *See* 42 U.S.C. § 403(f)(3).[2] Had appellant chosen to retire altogether at age 65, he would have been eligible to receive full social security benefits at that time. *See* 42 U.S.C. § 403(b).[3]

When appellant reached age 65 in 1989, the Fund reduced appellant's pension benefit by $274.50 per month in purported accordance with clause (ii) of Section 771 of the Act, which provides in pertinent part that a police retiree's pension benefits shall include, *inter alia*,:

> if positions covered by the fund are included in an agreement under the Federal Social Security Act, *up to seventy-five per centum of his full social security old-age insurance benefit* calculated in accordance with the provisions of the

2. This section of the Social Security Act provides that "an individual's excess earnings for a taxable year shall be 33⅓ per centum of his earnings for such year in excess of the [calculated] applicable exempt amount ... except that, in determining an individual's excess earnings for the taxable year in which he attains age 70, there shall be excluded any earnings of such individual for the month in which he attains such age and any subsequent month...."

3. This section of the Social Security Act provides that "[d]eductions ... shall be made from any payment or payments under this title ... until the total of such deductions equals ... such individual's benefit or benefits under section 202 for any month ... if for such month he is charged with excess earnings, under the provisions of subsection (f) of this section...."

Federal Social Security Act in effect on the date of his termination of employment, *except that such amount shall be included only upon attainment of the age at which the officer would be eligible to receive full social security old-age insurance benefits* and in determining such eligibility and such amount only compensation for services actually rendered by the officer and covered by the police pension fund shall be included ...

53 P.S. § 771 (emphasis added).

The Fund interpreted this section to mean that as long as appellant *could* receive social security benefits (i.e., by electing not to work beyond age 65), his pension benefits could be reduced to 75% of what his social security benefits would be were he receiving them.

Also in 1989, the Auditor General of Pennsylvania conducted an audit of the Fund and determined that with regard to the Fund's reduction of appellant's benefits, the Fund had misinterpreted the Act and erroneously reduced appellant's pension benefits. The Auditor General recommended that the Fund reinstate appellant's full pension benefits both on a prospective and on a retrospective basis. The Fund, however, refused to follow the Auditor General's recommendation and continued to pay pension benefits at the reduced rate.

Appellant then filed a complaint in the Allegheny County Court of Common Pleas alleging that appellees had improperly reduced his pension benefits. Appellant sought reimbursement of the $274.50 monthly reduction of his monthly pension benefits since May 5, 1989. After appellees filed a timely answer and new matter, they then filed a Motion for Summary Judgment asserting that the deduction in appellant's pension was proper and in accordance with the plain language of Section 771 of the Act. The trial court denied appellees' motion.

Thereafter, appellant filed a motion for judgment on the pleadings which the trial court granted. In considering whether appellant was "eligible" to receive social security old-age insurance benefits so as to enable the Fund to reduce his

police pension benefits to 75% of his social security benefits, the trial court first found that the term "eligible" as used in the Act was ambiguous since it could mean either "technical eligibility" or "selective eligibility."[4] Accordingly, the trial court turned to an analysis of the legislative intent and purpose underlying the statute, which it determined was to prevent a retired police officer from receiving duplicate retirement benefits (i.e., pension benefits and social security benefits) attributable to the same employment. In accordance with its determination of legislative intent, the trial court found that the term "eligible" meant "technical eligibility" and not "selective eligibility." Accordingly, since appellant was not technically eligible for social security benefits until age 70 because he continued to work, the trial court found that the Fund improperly reduced appellant's pension payments under Section 771 to 75% of what his social security payments would be were he receiving such payments.

In a 2–1 decision, the Commonwealth Court reversed the order of the trial court, finding that the language of Section 771 was clear and unambiguous that a municipal pension fund could reduce a retiree's pension benefit to 75% of his putative social security benefits under these circumstances, and that, therefore, the trial court exceeded its authority in looking beyond the language of the statute and determining the legislative purpose underlying Section 771 of the Act.[5] The majority construed Section 771 to mean that as long as a retired officer *could* receive social security benefits had he chosen to retire altogether, a municipal pension fund could

---

**4.** A retiree is "technically eligible" to receive full social security old-age insurance benefits if he is either (1) age 65 and not working or (2) age 70. A retiree is "selectively eligible" to receive full social security old-age insurance benefits (as that term is used in this opinion), if he is age 65.

**5.** Judge Friedman dissented from the Commonwealth Court's majority opinion because she interpreted the Act to mean that appellant's pension benefits could not be reduced until such time as he actually begins to receive social security benefits. The fact that both she and the trial court interpreted Section 771 in a manner different than a majority of the Commonwealth Court preliminarily casts doubt upon that majority's conclusion that the language of the Act was clear and unambiguous.

permissibly reduce such officer's pension benefits in accordance with the Act.[6] Appellant argues that because he continued to work, he was not eligible under federal law to receive social security benefits and that, therefore, the Fund improperly reduced his pension benefits when he turned 65.

Our determination of whether or not appellant's pension benefits legitimately could have been reduced depends upon the meaning of the phrase "eligible to receive" as it is used in this portion of the Act. When reviewing a statute, the interpretive principles set forth by the Statutory Construction Act guide this Court's analysis. *See* 1 Pa.C.S. § 1501 *et seq.*

In interpreting any statute, the legislative intent behind the enactment of the statute controls its ultimate meaning and application. 1 Pa.C.S. § 1921(a); *Frontini v. Commonwealth, Department of Transportation*, 527 Pa. 448, 451, 593 A.2d 410, 411–412 (1991). Where statutory words or phrases at issue are undefined by the statute, as in the instant case,[7] this Court is required to construe the words according to their plain meaning and common usage. 1 Pa.C.S. § 1903(a); *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 430, 439, 490 A.2d 806, 810 (1985). In that regard, the common usage of the term "eligible" relevant to this analysis is "fit and proper to be chosen." *See, e.g., Black's Law Dictionary* 521 (6th ed. 1990). In view of this definition and of the independent reasonableness of each of the parties' opposing arguments, we agree with the dissent to the Commonwealth Court's majority opinion that reasonable minds can differ regarding the definition of "eligible" as it is used in Section 771. This phrase is therefore ambiguous.

In turn, when a statutory word or phrase is ambiguous, this Court must look beyond the statutory language and

---

6. For this appeal, the standard of review of the trial court's order granting appellant's Motion for Judgment on the Pleadings is limited to determining whether the trial court abused its discretion, committed an error of law, or violated constitutional rights. *Agostine v. School District of Philadelphia*, 106 Pa.Commw. 492, 527 A.2d 193 (1987), *appeal denied*, 517 Pa. 610, 536 A.2d 1334 (1987).

7. *See* 1 Pa.C.S. § 1991 (Definitions).

attempt to ascertain the intention of the General Assembly by reference to various statutory construction factors, including:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

Further, because the Act is not included in any class of statute listed by the legislature as requiring a strict construction, this provision of the Act must be liberally construed to effect the Act's objective and to promote justice. 1 Pa.C.S. § 1928(c).

■ Initially, the Police Pension Act requires municipal employers to make contributions during their employees' term of employment to provide for those employees' retirement. 53 P.S. § 771. Once a police officer retires, the Police Pension Act requires a municipality to provide that officer with pension benefits at a rate of up to one-half of the officer's average monthly salary. 53 P.S. § 771. However, Section 771 also operates as a recognition that a municipality should be partially relieved of the burden of paying pension benefits to a retiree who receives full federal social security benefits since the retiree would not experience a net negative financial effect from the reduction in pension benefits since that reduction is more than offset by the retiree's receipt of social security benefits.[8] Pursuant to 1 Pa.C.S. § 1921(c)(1), (3) and (4) it is

8. In this case, appellant received full police pension benefits before appellees reduced those benefits by $274.50 when appellant reached age 65. Had appellant received federal social security benefits when he turned age 65, the reduction in his police pension benefits would have been offset by the receipt of federal social security benefits such that appellant would have experienced no net negative effect merely by

reasonable to conclude that the legislature enacted this part of Section 771 to ease municipalities' obligation to pay full police pension benefits when a retired officer receives full social security benefits, in an effort to moderate the depletion of the pension fund into which the municipality contributed. In this regard, we agree with the trial court that the occasion and necessity of the statute can be readily and objectively discerned on the face of the Act as a measure to prevent retired police officers from receiving duplicate retirement benefits attributable to the same employment.

Secondly, the Statutory Construction Act requires that this Court take into consideration the consequences of a particular interpretation of the applicable statute. 1 Pa.C.S. § 1921(c)(6). On the one hand, we have already examined the consequences of the Commonwealth Court's and appellees' interpretation of Section 771 on appellant and others similarly situated, finding that it is unnecessarily punitive towards pension beneficiaries who elect to continue to work and, further, that the interpretation is not in accordance with the kind of liberal construction of the statute we are required to give. *See* discussion at footnote 8, *supra.* On the other hand, appellees argued below that appellant's Section 771 interpretation runs counter to the spirit of the Municipal Pension Plan Funding Standard and Recovery Act, 53 P.S. § 895.102 *et seq.*[9]

There, appellees contended that "[a]ny construction of the term 'eligible' in [the Police Pension Act] which allows for the inclusion of the condition of receipt ... would defeat the actuarial principals [sic] required by" the Municipal Pension Plan Funding Standard and Recovery Act because a municipal

reaching the age of 65. The Commonwealth Court's decision, however, imposes on appellant a net monthly $274.50 negative financial impact for which no offset is available. We consider this interpretation of the Act to be unnecessarily punitive towards those police retirees who wish to remain in the work force. We also consider this interpretation unsupported by a liberal construction of the statute in accordance with 1 Pa.C.S. § 1928(c), *supra.*

9. Although appellees did not preserve this argument in their brief to this Court, we may nonetheless consider it as merely an alternative consequence of the particular interpretation appellant advances. *See* 1 Pa.C.S. § 1921(c)(6).

pension plan cannot forecast when a police pension beneficiary will actually receive social security benefits. Brief for appellees' Summary Judgment Motion in the Allegheny County Court of Common Pleas at 7. This consideration does not, in our opinion, defeat the inherent merit of appellant's suggested interpretation of Section 771.

Initially, in addition to the reference to the Municipal Pension Plan Funding Standard and Recovery Act cited by appellees, we note that the Pennsylvania Municipal Retirement Law at 53 P.S. § 881.101 *et seq.* is also instructive to this analysis. That statute deems a pension plan "actuarially sound" if it is funded annually at a level *not lower than* the normal cost of the plan plus a contribution towards the unfunded accrued liability sufficient to complete the funding thereof. 53 P.S. § 881.102 (emphasis supplied). Appellees' argument therefore fails to consider that any uncertainty created by appellant's suggested interpretation of Section 771 (i.e., the uncertainty created whereby municipalities would be forced to estimate, on a contingent basis, their pension liability attributable to the payment of benefits for a police officer who retires at age 65 from the police force but continues to work in another capacity) does not necessarily undermine the actuarial soundness of a municipal pension plan. If a municipality currently funds this contingency and later realizes the liability because the police officer elects to continue working (thereby foregoing social security benefits), the pension plan will be adequately funded for that position and the retiree would experience no net negative financial impact. On the other hand, if a municipality currently funds the contingency and the police officer elects to retire altogether, thereby establishing his unconditional entitlement to social security benefits, the municipality will be permitted to reduce his police pension plan benefits; the plan would be financially that much better off and the retiree would experience no net negative financial impact. Under either scenario, the pension plan would not be funded at a level lower than the normal cost of the plan and, therefore, would not be deemed "actuarially unsound." In short, appellant's suggested interpretation of Section 771 would neg-

atively impact the actuarial soundness of a municipal pension plan only if the municipality fails to fund the contingent pension liability attributable to the payment of benefits for a police officer who retires at age 65 from the police force but continues to work for some other employer.

Moreover, appellees' argument fails to consider that by its very nature an actuary's forecast is an evaluation of those variables which are beyond a municipality's power to control. For instance, the municipality cannot control the age at which a police pension beneficiary will die, which is perhaps the single most critical variable in developing a sound actuarial projection of a municipality's expected pension liability. Indeed, an actuary's forecast for a particular municipal police pension plan is grounded in various complex probability calculations which, in turn, are based on stated demographic and economic actuarial assumptions and experiences. *See* 53 P.S. § 895.201(a) (stating the requirements of the applicable pension plan actuarial valuation report). Therefore, an actuary's forecast for a particular municipal police pension plan may, without significant modification, also take into consideration that particular plan's experience regarding the rate at which those retired from the police force continue to work and forego federal social security benefits until age 70. There is simply no reasonable basis to distinguish this one variable from any other variable already included in a police pension plan actuarial forecast. Given this consideration, there is no basis for a municipality to fail to fund the contingent pension liability attributable to the payment of benefits for a police officer who retires at age 65 from the police force but continues to work in another capacity. Accordingly, there is no reason why appellant's suggested interpretation of Section 771 should undermine the actuarial soundness of a municipal police pension plan as appellees submit. Taking into consideration the consequences of the two opposing interpretations of Section 771 of the Act, it is again reasonable to conclude that the legislature enacted Section 771 to offset a retired police officer's pension only when that offset is actually supplanted by the receipt of federal social security benefit payments.

Thirdly, the Statutory Construction Act requires that this Court take into consideration the former law, if any, including other statutes upon the same or similar subjects. 1 Pa.C.S. § 1921(c)(5). Immediately following clause (ii) of Section 771's second paragraph (i.e., the language relevant to the analysis herein), the statute provides that a retired police officer's pension includes those benefits from the pension plan necessary to bring the total benefits in any month up to one-half the officer's average monthly salary:

[p]rovided, however, that any officer who receives pension or retirement benefits from any plan established at any time pursuant to this act and who is also entitled *to receive* social security old-age insurance benefits shall not regardless of when the officer *retired from* active service have his pension or retirement benefits offset or reduced by more than seventy-five per centum of the social security old-age insurance benefits *which he receives.*

53 P.S. § 771 (emphasis supplied).[10]

This language provides further credibility to the notion that the General Assembly did not intend to allow for a pension plan to reduce a retired police officer's police pension plan benefits until that police officer begins to receive federal social security benefits. The Commonwealth Court's and appellees' construction of the clause (ii) phrase "eligible to receive" social security benefits, therefore, is irreconcilable with this clause (iii) language.[11]

---

**10.** Although this language is also part of Section 771, it is nonetheless distinct from that language relevant to our analysis. Therefore, for purposes of the Statutory Construction Act, we will consider this clause (iii) language to be part of a statute "upon the same or similar subject" in accordance with 1 Pa.C.S. § 1921(c)(5).

**11.** We also note that this clause (iii) language was added to the Act by virtue of a 1979 amendment offered by Representative Spitz. When he proposed this amendment on the House floor, he stated that the amendment was necessary to "restrict[ ] the amount of offset for those officers who are covered by a pension plan that provide[s] that their social security benefits could offset the[ir] pension benefits. There is a handful of officers who had retired but who are not *collecting* social security benefits who are adversely affected." 1979 House Legislative Journal 2250 (daily ed. Oct. 31, 1979) (emphasis supplied). Though not directly correlated to clause (ii) of the Act, this reference to the floor

Finally, the Statutory Construction Act requires that this Court take into consideration legislative and administrative interpretations of the Act. 1 Pa.C.S. § 1921(c)(8). No doubt this statutory requirement flows directly from the proposition that an interpretation of a statute by the agency charged with the statute's implementation is accorded great weight and will be overturned only if such a construction is clearly erroneous. *Wiley House v. Scanlon*, 502 Pa. 228, 237, 465 A.2d 995, 999 (1983). With regard to the Act, the Pennsylvania Office of the Auditor General is charged with the duty to audit individual municipal police pension funds such as appellees', and to interpret the Act regarding an individual police pension fund's use of State monies. *See* 72 P.S. § 403 (the Auditor General is empowered to audit the accounts and records of every recipient of money payable from the State Treasury). *Accord Fedor v. Borough of Dormont*, 487 Pa. 249, 252, 409 A.2d 334, 335 (1979); *Commonwealth, Auditor General v. Borough of East Washington*, 474 Pa. 226, 228, 378 A.2d 301, 302 (1977). Here, by letter dated January 5, 1990, the Pennsylvania Auditor General's Office of Chief Counsel responded to appellees' inquiry regarding the propriety of its action regarding its reduction of appellant's police pension plan benefits. In pertinent part, the letter stated that:

> the Auditor General performed an audit on the Verona Borough Police Pension Plan for the period January 1, 1987 to December 31, 1988. In that audit there was a finding concerning [appellant] who had his pension benefit reduced by 75% of his primary social security benefits when he reached the age of 65. . . .

> [As a result of appellees' reduction, appellant] has not been receiving his full pension benefit. The situation occurred

remarks of clause (iii)'s sponsor is nonetheless instructive to our analysis and persuasive evidence that appellant's argument more closely indicates the General Assembly's intent that no pension benefit offset should occur absent the pension beneficiary's *receipt* of federal social security benefits. *See* 1 Pa.C.S. § 1921(c)(7) (in interpreting ambiguous statutory language, courts should take into consideration the contemporaneous legislative history of the statute in determining the legislative intent behind the law).

because [appellees] misinterpretated [sic] the rules and regulations governing [the Act] and the Social Security Act. Our audit report recommended that [appellant's] pension benefit be reinstated to the full amount not to be offset until he actually begins receiving social security benefits.

Letter from the Pennsylvania Auditor General's Office of Chief Counsel to August M. Damian, Esq. of 1/5/90.

In light of our determination that meaning of the phrase "eligible to receive" in Section 771 of the Act is subject to more than one reasonable interpretation (*see* discussion *supra*), we find that the interpretation accorded Section 771 of the Act by the Pennsylvania Auditor General is not clearly erroneous and therefore should not be overturned. *Wiley House, supra*, at 228, 465 A.2d 995. Accordingly, it is reasonable to conclude that, pursuant to the Auditor General's interpretation of Section 771, the legislature intended Section 771 to operate so that appellant's pension benefit should not be offset until he actually begins receiving social security benefits.

■■■ Taken together, our application of the various statutory construction factors listed at 1 Pa.C.S. § 1921(c) leads us to the definitive conclusion that the legislature intended that the language "the age at which the officer would be eligible to receive full social security old-age insurance benefits" should trigger the reduction of pension benefits only at the age at which an individual retired police officer is technically eligible to receive full federal social security benefits, an age dependent upon the individual circumstances of each case. Here, as long as appellant continues to work, he simply is not eligible to receive full federal social security benefits until he reaches age 70. Accordingly, we hold that Section 771 of the Act requires that a retired police officer's police pension benefits are not to be reduced until that officer has met all the legal qualifications for federal social security benefits and is capable of actually receiving full federal social security benefits.

■■■ The trial court, therefore, was correct in determining that appellant was entitled to an award of $274.50 for each month since May 5, 1989, during which time appellees improp-

erly reduced appellant's pension benefits. The order of the Commonwealth Court is therefore reversed and the order of the Allegheny County Court of Common Pleas is reinstated.

PAPADAKOS, J., did not participate in the decision of this case.

ZAPPALA, J., files a dissenting opinion in which FLAHERTY, J., joins.

MONTEMURO, J., is sitting by designation.

ZAPPALA, Justice, dissenting.

I dissent.

In reading Section 771 of the Police Pension Act, the majority mischaracterizes the workings of the federal social security old-age benefit program and thereby introduces the very ambiguity the opinion purports to resolve. Simply put, the distinction between "technical eligibility" and "selective eligibility" identified by the majority is a fiction, a manipulation of words serving to bring factors that affect the amount of benefits received within the concept of "eligibility" for benefits.

The "eligibility"[1] requirements for old age insurance benefits are set out in 42 U.S.C. § 402. Subsection (a) provides that individuals insured under the program who have attained the age of 62 shall be entitled to a monthly old age insurance benefit. The benefit is equal to an amount known as the primary insurance amount "[e]xcept as provided in subsection (q)" of Section 402. Subsection (q) provides for a *reduction* of the benefit amount for certain beneficiaries, including any month "before the month in which such individual attains retirement age." Retirement age is defined elsewhere as 65 years of age in the case of persons reaching age 62 before January 1, 2000. Thus a person is entitled to reduced benefits at age 62 and is entitled to benefits with no reduction at age 65.

---

1. The Social Security Act speaks in terms of "entitlement."

The following section, Section 403, establishes the maximum benefits that may be received and further provides for *de*ductions on account of work. Significantly, Section 403(b)(1) declares that "[d]eductions ... shall be made *from any payment* or payments under this subchapter *to which an individual is entitled* ... on the basis of such individual's wages and self-employment income...." (Emphasis added). Subsection (f)(1) goes on to state that "no part of excess earnings shall be charged to any month ... (b) in which such individual was age seventy or over." Thus a person between the ages of 65 and 70 is *entitled* to (or eligible for) the full monthly benefit, but deductions will be made for earnings in excess of a specified amount.

The majority errs in characterizing the appellant as being "ineligible to receive federal social security benefits until he reached age 70, at which age he would receive full social security benefits without regard to his employment status." Opinion at 27. Rather, upon reaching age 65 the appellant was eligible to receive full benefits, but his excess earnings necessitated deductions equal to the amount he was eligible to receive and thus he actually received nothing. Upon reaching age 70, he would continue to be eligible to receive full benefits, but deductions for excess earnings would no longer be required.[2]

When Section 711 of the Police Pension Act is read in this context, there is no ambiguity requiring resort to statutory construction to ascertain legislative intent. Senior Judge Silvestri, writing for the majority of the Commonwealth Court panel, observed that the common pleas court "under the guise of statutory interpretation, ... merely stated what it presume[d] to be the purpose of Section 711." *DeLellis v.*

---

**2.** The majority also errs in stating that "The Commonwealth Court's decision ... imposes on appellant a net monthly $274.50 negative financial impact *for which no offset is available.*" (Opinion at 29, n. 8) (emphasis added). This conclusion ignores the fact that the appellant is not receiving social security benefits because he is receiving earned income in excess of the designated amount. The earned income is the offset, and the appellant suffers no net negative impact. Any "negative impact" might as easily be attributed to the deductions required by the Social Security Act as to Section 711.

*Borough of Verona,* 159 Pa.Commw. 680, 684, 634 A.2d 689, 691 (1993). Rejecting this approach, the majority held that "the statutory language is clear that because DeLellis is eligible for social security benefits, although not receiving them, that Verona, pursuant to Section 771, was entitled to offset his pension." I would adopt this opinion and affirm the Order of the Commonwealth Court.

FLAHERTY, J., joins this dissenting opinion.