BETHLEHEM STEEL CORPORATION, a corporation, Energy Pipeline Company, a corporation, Energy Production Company, a corporation, Union Drilling, Inc., a corporation, New Jersey Natural Resources Company, a corporation, and Bessie 8, a Pennsylvania joint venture, Petitioners,

v.

The PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 13, 1996.

Decided July 12, 1996.

Reargument Denied Sept. 11, 1996.

James H. Cawley and Joseph L. Robinson, for Petitioner, Bethlehem Steel Corp. and Bessie 8 Joint Ventures.

Dennis J. Lewis, for Intervenor, Peoples Natural Gas Co.

Patricia Krise Burket, for Respondent, Public Utility Commission.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Bethlehem Steel Corporation (Bethlehem), Energy Pipeline Corporation (Pipeline), Energy Production Company (Production), Union Drilling, Inc., New Jersey Natural Resources Company and Bessie 8 (Petitioners, collectively) appeal from an order of the Pennsylvania Public Utility Commission (PUC) reversing the decision of Administrative Law Judge (ALJ) James D. Porterfield and ordering Petitioners to file an application for a certificate of public convenience. The single issue for our disposition is whether the PUC erred in holding that Petitioners were subject to its jurisdiction because they engaged in providing a public utility service to or for the public. The relevant facts are as follows.

Until 1982, Production produced and sold natural gas to various interstate pipelines and to local distribution companies. However, in late 1982, Production's traditional customers began to decrease their gas purchases, causing Production to find alternative markets in commercial and industrial end-users. To this end, Production contacted numerous potential customers within a twenty-mile radius of Production's leasehold interests in Indiana County, and eventually, Production entered into discussions with Bethlehem about providing natural gas service to its Johnstown plant. The discussions with Bethlehem culminated in the execution of a gas sales contract between Production and Bethlehem. The gas was to be delivered by pressurized trucks, but due to unforeseen difficulties, no gas was ever delivered under this agreement.

Subsequently, the owners of Production formed a new corporation, Pipeline, and both companies entered into a new agreement with Bethlehem (Bethlehem Agreement) on January 26, 1984, and amended January 3, 1985. Under the terms of this contract, Production would provide natural gas for Bethlehem's Johnstown plant, and Pipeline would make its best efforts to construct a pipeline for transporting the natural gas from the gas fields directly to the Johnstown plant. Bethlehem provided some of the financing for the construction of the pipeline.

By agreement of June 7, 1984, a joint venture, called Bessie 8, was formed in order to raise capital for the pipeline project. The venturers included Production, Pipeline, Union Drilling, Inc. and New Jersey Natural Resources Co. Bessie 8 successfully capitalized the project, and by February, 1985, the twenty-one mile pipeline was completed and gas was flowing. Neither Production nor Pipeline applied for a certificate of public convenience to operate the pipeline. Shortly thereafter, Frank Ross, the president of Production, offered to provide the same service to Anchor Glass Container Corporation (Anchor Glass), using the Bessie 8 project as a model. However, no further action was taken on the matter.

Approximately nine months later, Peoples's Natural Gas (PNG) filed a complaint against Bessie 8 and the individual venturers alleging that Petitioners' provision of natural gas services was in violation of Section 1101 of the Public Utility Code, 66 Pa.C.S. § 1101, which requires that any proposed public utility obtain a certificate of public convenience before lawfully beginning to offer, render, furnish or supply public utility service within the Commonwealth.

Petitioners admit that they are providing uncertificated service to Bethlehem's Johnstown plant, but they deny they are subject to PUC jurisdiction, because they are not a public utility. Section 102 of the Public Utili-

ty Code[1] defines "public utility" in pertinent part as follows:

> (1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
>
> (i) Producing, generating, transmitting, distributing or furnishing natural or artificial gas, electricity, or steam for the production of light, heat, or power to or for the public for compensation.
>
> (v) Transporting or conveying natural or artificial gas ... by pipeline or conduit, for the public for compensation.
>
> (2) The term public utility does not include:
>
> (i) Any person or corporation, not otherwise a public utility, who or which furnishes service only to himself or itself.
>
> (iii) Any producer of natural gas not engaged distributing such gas directly to the public for compensation.

The ALJ held that because the natural gas production and the transportation facilities of the Bessie 8 joint venture were exclusively dedicated, by contract, to the use of Bethlehem's Johnstown works, and because the entire Bessie 8 system contained no interstate pipeline connections, no intrastate pipeline connections, no public utility connections, nor any connections or sources of gas other than Pennsylvania native field production, the service was private in nature.

In contrast, the PUC ruled that the Bessie 8 pipeline was a public utility. The PUC cited Production's wide solicitation efforts, prior to entering into a contract with Bethlehem, apparently designed to obtain industrial customers, as well as their successful effort to get a customer, Bethlehem, and then the later solicitation of Anchor Glass, after the pipeline was completed, as evidence that they held themselves out as a public utility.[2] Moreover, the PUC also found that the facts in the PUC case, *Equitable Gas Co. v. Dane Baird, Dane Baird Investments, Inc., and PFP Pipeline Co. (Dane Baird, President)*, Docket No. C–844525 (Pa.P.U.C. September 4, 1985), were strikingly similar to those in the present case. In *Dane Baird*, the PUC held that the pipeline company, although having only one customer, was providing a public utility.

■ Under Section 335 of the Code, 66 Pa.C.S. § 335, the PUC is the ultimate factfinder, weighing evidence and resolving conflicts in testimony. *Pennsylvania Electric Co. v. Pennsylvania Public Utility Commission*, 81 Pa.Cmwlth. 285, 473 A.2d 704 (1984). The scope of appellate review in PUC cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are not supported by substantial evidence. *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 430, 490 A.2d 806 (1985). Whether the PUC correctly applied the legal standard for determining whether a utility serves the public and is subject to PUC jurisdiction, is a question of law, subject to plenary review. *Waltman v. Pennsylvania Public Utility Commission*, 142 Pa.Cmwlth. 44, 596 A.2d 1221 (1991), *affirmed without opinion*, 533 Pa. 304, 621 A.2d 994 (1993).

---

1. 66 Pa.C.S. § 102.

2. The PUC also based its decision on a statement in Petitioners' reply to PNG's exceptions, which indicated that the pipeline operators were prohibited by their contract from serving any other customer without Bethlehem's approval. The PUC held that this statement implied that service to other customers was a possibility, because, conceivably, Bethlehem's approval could be obtained and then Petitioners would be free to market natural gas to other consumers. The PUC held that such service to others must have been contemplated, otherwise the contract provision allowing for such a possibility would not have been included.

However, after close perusal of the Bethlehem Agreement, it appears that there is no provision allowing for the possibility of the pipeline serving other customers with Bethlehem's approval. Indeed, Petitioners seem to have misstated the content of the contract (to their detriment) in their reply exceptions, and then the PUC repeated this misstatement, without checking the contract language itself. The contract states in paragraph 1(a) that Energy Pipeline shall continue to use its best efforts to construct and complete a natural gas pipeline (the "Pipeline") to be used *"solely for the transportation of natural gas to be purchased by Bethlehem from Production Company ...,"* and therefore Petitioners' statement may not properly be used by the PUC to show that Petitioners held itself out to the public as a public utility.

There is no bright line rule for determining whether a utility is providing public utility service. However, a number of cases are helpful in specifying the criteria which are important in making this determination. In *Drexelbrook Associates v. Pennsylvania Public Utility Commission*, 418 Pa. 430, 212 A.2d 237 (1965), the question was whether a corporation which owned an apartment complex, and then began to supply water and electricity service to the tenants of the complex was a public utility and subject to the jurisdiction of the PUC. The Supreme Court held that the only persons who would be entitled to and who would receive service from Drexelbrook would be those who had entered into, or would enter into a landlord-tenant relationship with Drexelbrook, and thus those to be serviced were a "special class of persons ... and not a class open to the indefinite public." *Id.*, at 436, 212 A.2d at 240. Under *Drexelbrook*, the test, therefore, for determining whether an entity was a public utility was not whether all tenants were being furnished services, but whether anybody among the public outside the Drexelbrook group was privileged to demand service. *Id.*

■ *Drexelbrook* cited *Borough of Ambridge v. Public Service Commission*, 108 Pa. Superior Ct. 298, 304, 165 A. 47, 49 (1933) for the principle that, "[t]he public or private character of the enterprise *does not depend ... upon the number of persons by whom it is used*, but upon whether or not it is open to the use and service of all members of the public who may require it." (Emphasis added.) Thus, a company holding itself out as willing to provide utility services to the public, even if it only services one other entity, is a public utility subject to the jurisdiction of the PUC.

The *Drexelbrook* court also relied on *Aronimink Transportation Co. v. Public Service Commission*, 111 Pa. Superior Ct. 414, 170 A. 375 (1934), for its holdings that, (1) when a business furnishes services to a special class of persons, it is not public utility service, and (2) when the utility service rendered is mere-

ly incidental to the main business of the corporation, e.g., running an apartment complex, the fact that hundreds of people may use the service does not transform the service to a public utility service.

This reasoning was followed in *C.E. Dunmire Gas Co., Inc., v. Pennsylvania Public Utility Commission*, 50 Pa.Cmwlth. 600, 413 A.2d 473 (1980). There, the business originally wholesaled its gas to a manufacturer and to a local distributer, but when the wholesale business declined, the utility's business changed to serving mostly residential consumers. We held that when the only restriction that a utility puts on whom it serves is based upon the availability of the utility's supply, it is not limiting itself to a special class, and is instead a public utility providing a service to an indefinitely open class of customers.

Similarly, in *Waltman*, two intrastate telecommunications companies applied for certificates of public convenience, and petitioners argued that the applicants were not providing services to the public but to certain individuals. This Court held that while it was true that the applicants' services were only economically feasible for large volume users, the applicants were still providing a public utility. Citing *Drexelbrook*[3] the court in *Waltman* stated:

> According to our Supreme Court, the test for determining whether utility services are being offered "for the public" is
>
> 'whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or *to any limited portion of it*, as contradistinguished from holding himself out as serving or ready to serve only particular individuals.' Drexelbrook, 418 Pa. at 435–36, 212 A.2d at 239 (emphasis added in Waltman).

*Waltman*, 596 A.2d at 1223–1224.

The *Waltman* Court also relied on the record evidence that the applicants' facilities were not designed or constructed to serve

---

**3.** While *Waltman* attributes the quote *infra* to the Supreme Court's decision in *Drexelbrook*, in fact this is a quote from the Superior Court in *Bor-* *ough of Ambridge*, 108 Pa. Superior Ct. at 304, 165 A. at 49.

select groups of individuals, but were intended for any member of the public which elected to use its services.

■ Petitioners claim that under the standards derived from the case law the PUC erred in holding that provision of natural gas services by Bessie 8 to Bethlehem was a public utility service. They claim that they did not hold themselves out, expressly or impliedly, as engaged in the business of supplying natural gas service to the public, as a class, or to any limited portion of it. Rather, they claim that Production's solicitation efforts, prior to the formation of the Bessie 8 joint venture and the building of the pipeline, were efforts to find a single customer, not to make service available to all members of the public who required it.

Alternatively, Petitioners argue that even if seen as proposals for public utility type service, Production's solicitations cannot be attributed to the joint venture because the Bessie 8 joint venture did not yet exist. Thus, they contend that the only solicitation which might at all be attributed to the joint venture was Mr. Ross' solicitation of Anchor Glass, because this occurred after the venture was formed. However, Petitioners have disavowed this solicitation, which they contend was made without the authority of the Bessie 8 joint venture, and which immediately resulted in the venture advising Mr. Ross to discontinue any such efforts.

In response to this disavowal, the PUC stated, "[Petitioners'] attempts to retroactively disavow the wide solicitation efforts of the *President* of EPC [Production] and EPD [Pipeline] are simply irrelevant in light of his actual, express and implied authority to make such efforts." (PUC opinion at 17, December 7, 1992.) (Emphasis in original.) Thus, Mr. Ross' solicitation of Anchor Glass was found by the PUC to be a manifestation of Petitioners' intent to serve the public.

We also must conclude that Petitioners' testimony that its solicitation efforts prior to the Bethlehem Agreement were directed to finding one customer only was not credited by the PUC. The PUC, as ultimate fact-finder, weighed the evidence in this closely contested case, and determined instead that Production held itself out as ready to serve

the public to the extent of its capacity, and then executed a contract in which its entire capacity was used by Bethlehem's Johnstown plant. In *Dunmire*, we held that when the limitation on the utility service provided to the public is due to the amount of capacity available, it is not tantamount to service to a restricted class, and is not private in nature.

Thus, Petitioners' case is not helped by their assertion that they refused to provide service to all potential customers after making the Bethlehem Agreement. The record shows that at that time, Bethlehem was using the entire output on the Bessie 8 pipeline. Unlike *Drexelbrook* and *Aronimink*, their refusal to serve others was not due to the inherent limitations of the class of people they served, such as tenants in an apartment complex, but to the limitations of capacity.

A similar argument was made in *Keystone Warehousing Co. v. Public Service Commission*, 105 Pa. Superior Ct. 267, 161 A. 891 (1932), *cert. denied*, 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933), where a trucking company, seeking to avoid common carrier status, claimed that it was not a public utility because it served only selected customers by private contracts and had refused to contract with certain customers who had applied for service. However, the Court dismissed this argument and held that the existence of such private contracts, and Keystone's refusal to enter into such contracts with some entities, were not factors to be considered when determining whether the business was offering public utility service and especially when such contracts are an incident to the provision of any form of utility service, whether public or private. Rather, the dispositive finding was that the trucking service provided by Keystone was not merely occasional, casual and incidental to some other business, but was its main business enterprise. This fact, combined with the wide business solicitations made by the plaintiff in *Keystone*, indicated that the trucking company was a public carrier.

Similarly here, the PUC found that, after the formation of Bessie 8 to raise capital for the Bethlehem Agreement, Mr. Ross, Production and Bessie 8 held themselves out as

ready to serve as many customers as they could by finding sources of fuel and distributing it by pipeline, as shown by Mr. Ross' solicitation letter to Anchor Glass, where Petitioners offered to supply natural gas on the Bessie 8 model. Therefore, although Petitioners' particular pipeline was designed and constructed to serve only one entity, i.e., the Johnstown plant of Bethlehem Steel, the PUC found that Petitioners disavowal of Mr. Ross' solicitation efforts was ineffective, and Petitioners were holding themselves out as ready and willing to build other pipelines and find other sources of natural gas to service other individual industries.

The PUC's factual determination that Production was ready to serve all members of the public to the extent of its capacity is supported by substantial evidence, and thus we find no legal error in its conclusion that Petitioners were holding themselves out as ready to supply services "to or for" the public, and were thus public utilities as defined under Section 102 of the Public Utility Code.

Here, unlike the cases in which our courts have found that a company was not a public utility because the provision of utility service was incidental to some other business which was limited to a defined and privileged class of persons, Petitioners' primary business is the furnishing and distributing of natural gas. As it is the character of the service which Petitioners' render, not the number of customers served, which, under our case law, determines their status as a public utility under the Act, the PUC did not err in finding Petitioners' business to be a public utility. *See Bucks County Board of Commissioners v. Pennsylvania Public Utility Commission,* 11 Pa.Cmwlth. 487, 313 A.2d 185 (1973).

Accordingly, we affirm the order of the PUC granting the exceptions filed by PNG and ordering that Petitioners file an application for a certificate of public convenience and necessity.

### ORDER

AND NOW, this 12th day of July, 1996, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.

PELLEGRINI, Judge, dissenting.

Because serving a single customer is not public utility service as defined by the Public Utility Code, I respectfully dissent from the majority's opinion that Bessie 8 is a public utility and must apply for a certificate of public convenience and necessity.

Bessie 8 is a joint venture between Energy Pipeline Company (Pipeline), Energy Production Company (Production), Union Drilling, Inc., and New Jersey Natural Resources Company (collectively, joint venturers). The joint venture was formed in order to raise capital for the construction of a pipeline project to supply natural gas pursuant to an agreement entered into between the joint venturers and Bethlehem Steel Corporation (Bethlehem). The pipeline project, for which no certificate of convenience was applied for, was completed by February of 1985. Pursuant to contract, the natural gas production and transportation facilities of Bessie 8 were exclusively dedicated to the use of Bethlehem's Johnstown works. Bessie 8 has no interstate pipeline connections nor sources of gas or any connection other than Pennsylvania native field production.

Prior to the joint venturer's contract with Bethlehem, Production had engaged in wide solicitation for a pipeline customer. After the pipeline was completed and the contractual agreement entered into with Bethlehem, the President of Production allegedly, without the knowledge or permission of the other joint venturers, solicited Anchor Glass in an effort to obtain them as a pipeline customer. Anchor Glass was never obtained as a customer, nor was the pipeline ever used by a customer other than Bethlehem. Moreover, the President of Production was reprimanded and told not to engage in further solicitation.

In approximately November of 1985, Peoples Natural Gas (Peoples) filed a complaint against Bessie 8 alleging that its provision of natural gas services was in violation of Section 1101 of the Public Utility Code (Code), 66 Pa.C.S. § 1101. Admitting that they provide uncertified service to Bethlehem's Johnstown plant, Bessie 8 contended that it did not need to obtain a certificate of public

convenience because it was not a public utility.

The ALJ agreed that the Bessie 8 pipeline did not constitute a public utility as defined by Section 102 of the Code. On appeal, the Public Utility Commission (PUC) held that the Bessie 8 pipeline was a public utility because, based on the actions of the joint venturers in soliciting customers both before and after the contract was entered into with Bethlehem, Bessie 8 held itself out as a utility available to the public. This appeal followed.

Acknowledging that there is no bright line rule for determining whether a utility constitutes a public or private service, the majority accepts the PUC's rationale and likewise reaches the conclusion that the Bessie 8 pipeline constitutes a public utility. Like the PUC, the majority accepts as evidence of Bessie 8's public nature the solicitation efforts of Production in obtaining a customer for the pipeline. It does not accept its use today as controlling. Just because the President of Production, one of four joint venturers, acting on his own behalf and against orders, unsuccessfully solicited the business of a single additional customer, without more, is not enough to conclude that Bessie 8 operates as a public utility.

As an additional reason, the majority holds that the character of the service and not the number of customers served determines whether a utility is a public one under the Code. Just because Bethlehem is the sole user of the pipeline, the majority holds, is not enough to bring Bessie 8 outside the scope of a public utility. I disagree with that holding because it is at odds with the Code and the common understanding of the term. Section 102 of the Code, 66 Pa.C.S. § 102(2)(iii), defines the term "public utility" to specifically exclude "a producer of natural gas not engaged in distributing such gas directly to the public for compensation." In *Waltman v. Pa. Public Utility Commission*, 142 Pa. Cmwlth. 44, 596 A.2d 1221 (1991), *affirmed without opinion*, 533 Pa. 304, 621 A.2d 994 (1993), we held that the nature of the actual service is the pivotal element that determines the provider's status as public or private, and that where the general public has the right to subscribe to the service, it is public, and when it doesn't, it is private. The exclusive contractual service by which Bessie 8 provides natural gas solely to Bethlehem is not the distribution of gas to the public.

Because Bessie 8 does not serve the public, and, as such is not a public utility, I would reverse the PUC's decision.